**E-FILED on** 10/01/2010

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PHU VAN NGUYEN, HAI THAI NGUYEN, Husband and Wife,<br><br>Plaintiff,<br><br>v.<br><br>BAC HOME LOAN SERVICES, LP, et al.,<br><br>Defendants. | No. C-10-01712 RMW<br><br>ORDER GRANTING MOTIONS TO DISMISS<br><br>**[Re Docket Nos. 15, 19, 29]** |

Defendants move to dismiss the Complaint. Plaintiffs have not filed an opposition. For the reasons set forth below, the court grants defendants' motions.

## I. BACKGROUND

**A.     The Home Affordable Modification Program**

On October 3, 2008, Congress passed the Emergency Economic Stabilization Act ("EESA"), Pub. L. No. 110-343, 122 Stat. 3765, authorizing the United States Department of the Treasury (the "Treasury") to purchase $700 billion in troubled assets to stabilize credit markets. 12 U.S.C. § 5201 (2008). Section 109 of the EESA encourages the Secretary of the Treasury to undertake foreclosure mitigation initiatives:

> Section 109: Foreclosure Mitigation Efforts.
>
> a. RESIDENTIAL MORTGAGE LOAN SERVICING STANDARDS. To the extent that the Secretary acquires mortgages, mortgage backed securities, and other assets secured by residential real estate, including multifamily housing, the Secretary shall implement a plan that seeks to maximize assistance for homeowners and use the authority of the Secretary to encourage the servicers of the underlying mortgages, considering net present value to the taxpayer, to take advantage of the HOPE for Homeowners Program under section 257 of the National Housing Act or other available programs to minimize foreclosures. In addition, the Secretary may use loan guarantees and credit enhancements to facilitate loan modifications to prevent avoidable foreclosures.

Notably, Congress did not require that the Treasury's plan benefit any identified category of borrowers or loans, or that the plan utilize any specific form of assistance. Instead, EESA provides the Treasury full discretion to structure foreclosure mitigation initiatives, including their size, duration, and scope.

Enabled with this authority, the Treasury unveiled the Home Affordable Modification program (the "HAMP") as the Obama Administration's primary foreclosure prevention program. Compl. ¶¶ 26-27. In simple terms, HAMP provides financial incentives[1] to loan servicers and investors to encourage them to modify the terms of existing private mortgages where foreclosures may be avoidable and modification is in the financial interests of the involved parties. *Id.* ¶ 33. To help administer HAMP, the Treasury has retained the Federal National Mortgage Association ("Fannie Mae") as its financial agent. *Id.* at ¶ 33; *see also* The Financial Agency Agreement between Treasury and Fannie Mae (Dkt. No. 16 Exh. 1).[2] Fannie Mae acts as the HAMP

---

[1] Fannie Mae, acting as financial agent of the United States, compensates participating servicers and investors for successful modifications. Participating servicers receive $1,000 for each completed modification, payable upon the borrower's successful completion of the 90-day trial period. Servicers may also receive additional payments for up to three years provided that they meet additional requirements. Compl. ¶ 33.

[2] Pursuant to Federal Rule of Evidence 201, the court may take judicial notice of adjudicative facts, which are "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonable be questions." In addition, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Accordingly, the court considers plaintiffs' loan agreement and Fannie Mae's agreement with the Treasury, as well as the Treasury's Guidelines and Supplemental Directives not submitted by plaintiffs but nevertheless referred to in the Complaint. Moreover, plaintiffs do not contest the

administrator, record-keeper, and paying agent, and enters into contracts with private servicers on the Treasury's behalf. Compl. ¶ 3. But at the same time, Fannie Mae is required by its agreement to "comply with all lawful instructions or directions received from the Treasury." Dkt. No. 16 Exh. 1, at 4. Fannie Mae's contract with the Treasury is clear on this point, noting that the "Treasury is solely responsible for development the Program Guidelines and . . . [Fannie Mae] must follow the Program Guidelines." *Id.* at F-2.

Servicer participation in HAMP is completely voluntary. However, servicers of loans guaranteed or owned by government sponsored entities (GSEs) such as the Federal Home Loan Mortgage Corporation ("Freddie Mac") or Fannie Mae are required to participate in HAMP. Compl. ¶ 3. Those servicers who elect to participate enter into contracts—known as Servicer Participation Agreements ("SPAs")— with Fannie Mae as the financial agent of the Treasury. Under the SPAs, servicers commit to perform loan modification pursuant to the Program Guidelines ("Guidelines"). *Id.* The Guidelines establish a number of initial criteria for a loan to be eligible for HAMP modification, including:

(1) the borrower's mortgage is a first lien originated before January 1, 2009;
(2) the mortgage has not been previously modified under HAMP;
(3) the loan is delinquent or an imminent default is reasonably foreseeable;
(4) the mortgage is secured by a property that is the borrowers' principal residence;
(5) the borrower's monthly mortgage payment is greater than 31% of the borrower's gross monthly income;
(6) the borrower has experienced financial hardship;
(7) the borrower lacks the liquid assets to meet the monthly mortgage payments; and
(8) the unpaid principal balance on the mortgage is less than or equal to $729,750 for one unit.

*Id.* ¶ 35.

But these initial eligibility requirements do not automatically qualify a borrower for HAMP modification. After a servicer verifies initial eligibility, the Guidelines further require the servicer to

---

authenticity of these documents.

ORDER GRANTING MOTIONS TO DISMISS—No. C-10-01712 RMW
JLR                                                           3

1   evaluate the loan to determine whether a HAMP modification is required  *See* Supplemental

2   Directive 09-01 (Dkt. No. 16 Exh. 3).  Modification is not required in several circumstances:

3       (1)    Where the projected net present value ("NPV") of the borrower's modified loan payments would be less than the projected NPV if the loan were not modified (a negative NPV result).  Compl. ¶ 36.[3]  Servicers with sufficiently large books of business are permitted to customize the NPV model to fit their unique loan portfolios.  *See* Dkt. No. 16 Exh. 3, at 4-5.  However, any proprietary NPV model must adhere to the guidelines and framework outlined in the Treasury's model.  Compl. ¶ 93.

    (2)    Where the application of a modification "waterfall" (specified reduction in interest rate, extensions of loan terms, and forbearance of principal) will not achieve a targeted monthly payment of 31% of the borrower's gross monthly income.  Compl. ¶ 37.

    (3)    Where a non-GSE loan is investor-owned under terms that would prohibit loan modification absent investor approval, and the servicer's reasonable efforts to lift the prohibition are unsuccessful.  *Id.* ¶ 40.

If the loan qualifies under HAMP, the servicer first offers a 90 trial modification period where the borrower must make payments based on the standard modification waterfall calculation.  Compl. ¶ 41.  Under the Guidelines, the servicer "must not conduct foreclosure sales on loans previously referred to foreclosure or refer new loans to foreclosure during the 30-day trial period that the borrower has to submit documents evidencing an intent to accept the Trial Period Plan offer.  Dkt. No. 16 Exh. 3, at 14; Compl. ¶ 46.  Even if a borrower is denied HAMP modification, the servicer must consider "other foreclosure prevention alternatives, including alternative modification programs, deed-in-lieu and short sale programs."  Dkt. No. 16 Exh. 3, at 3; Compl. ¶ 46.  Upon successfully completing the trial period, the modification becomes permanent.  Compl. ¶ 41.

    Between September and November 2009, the Treasury issued additional guidelines requiring participating servicers to communicate directly with borrowers and Fannie Mae regarding HAMP denials.  Compl. ¶ 100.  For example, Supplemental Directive 09-06 enumerates 13 reasons for a loan modification denial.  Each reason corresponds to a code that specifies why a borrower was not offered or accepted into a trial plan.  *Id.*  Moreover, Supplemental Directive 09-08 requires participating servicers to provide borrowers with a written notice setting forth in detail some, but not

---

[3] "The NPV test compares the net present value of cash flow from the borrower's loan if modified under HAMP to the net present value of cash flow without modification.  In other words, the test looks to see if a loan as modified yields a more positive financial outcome to the investor or other holder of the note secured by the mortgage than a foreclosure on the property would yield."  Compl. ¶ 36.

ORDER GRANTING MOTIONS TO DISMISS—No. C-10-01712 RMW
JLR    4

1 all, of the grounds for the denial of HAMP modifications. *Id.* ¶ 50. The Treasury has also created a
2 toll-free HOPE hotline which allows borrowers to get more information about the HAMP process.
3 *Id.*

### B.     The Parties

On October 26, 2005, plaintiffs Phu Van Nguyen and Hai Thi Nguyen entered into a $600,000 mortgage loan to refinance their home. Dkt. No. 31 Exh. A.  Bank of America Home Loan Servicing, LP ("BACHL") is the servicer on plaintiffs' mortgage loan. Compl. ¶ 53. Between September 2009 and February 2010, plaintiffs contacted BACHL on multiple occasions, each time requesting a HAMP loan modification. *Id.* ¶ 64. Those requests were either denied or alternatively, not evaluated. *Id.* ¶ 64, ¶¶ 52-53. Plaintiffs allege that even though they meet the minimum HAMP eligibility requirements, BACHL has nevertheless refused to apply the waterfall calculation or the NPV test to their mortgage. *Id.* ¶ 53. Additionally, plaintiffs allege that BACHL has erroneously asserted that the plaintiffs' mortgage is not eligible for HAMP modification because the mortgage is not owned or guaranteed by Fannie Mae or Freddie Mac. *Id.* ¶ 55. In December 2009, the Trustee under the Deed of Trust filed a Notice of Default, initiating foreclosure proceedings on plaintiffs' mortgage. *Id.* ¶ 64.

### C.     Plaintiffs' Claims

Plaintiffs originally filed their action[4] in the Superior Court of California for the County of Santa Clara on March 18, 2010. Because the action arises under federal law, defendants removed the action to this court pursuant to 28 U.S.C. § 1441.

In Count 1, plaintiffs allege that BACHL breached its SPA with Fannie Mae. Plaintiffs claim that they are third party beneficiaries of the contract and accordingly have proper standing to bring a claim of breach against BACHL. Compl. ¶¶ 104-111. In Count 2, plaintiffs allege that BACHL violated their constitutional due process rights under the 5th Amendment by failing to provide meaningful written notice regarding its decision to grant or deny to plaintiffs' and other class members' request for HAMP modifications. Plaintiffs further allege that their due process rights

---

[4]  Defendant BACHL notes that the Complaint appears to be a cut-and-past copy of a complaint in a previously filed class action. *See* Dkt. No. 31 Exh. D.

were further violated because BACHL has failed to provide a procedure to challenge and correct an erroneous decision to deny a mortgage modification under HAMP. *Id.* ¶¶ 111-118. In Count 3, plaintiffs allege that Timothy Geithner (in his capacity as Secretary of the Treasury), Henry Allison (in his capacity as Assistant Secretary for Financial Stability), Edward DeMarco (in his capacity as Acting Director of the Federal Housing Finance Agency ("FHFA")), Fannie Mae, Michael Williams (in his capacity as president and CEO of Fannie Mae), and Eric Schuppenhauer (in his capacity as senior vice president at Fannie Mae) similarly violated plaintiffs due process rights under the 5th Amendment. *Id.* ¶¶ 119-126.   In Count 4, plaintiffs allege that BACHL breached an implied covenant of good faith and fair dealing when it failed to give borrowers meaningful notice of their HAMP eligibility, as well as provide borrowers a procedure to challenge erroneous determinations.

Defendants Timothy Geithner and Henry Allison have been dismissed from this action. The remaining defendants have moved to dismiss all claims under Federal Rules of Civil Procedure 12(b)(1) and (12)(b)(6). Their motions are unopposed.

## II. ANALYSIS

### A.    Count 1: Breach of Contract

In Count 1, plaintiffs allege that BACHL breached its contract with Fannie Mae when it failed to properly determine plaintiffs' HAMP eligibility. Despite the fact that plaintiffs are not parties to the SPA between BACHL and Fannie Mae, plaintiffs allege that they have standing to assert their claim as third party beneficiaries.

In contrast, defendant BACHL argues that plaintiffs are not parties to the contract and therefore, plaintiffs lack standing to bring a breach of contract claim. BACHL points out that because government contracts often benefit the public at large, members of the public are generally assumed to be incidental beneficiaries, rather than intended beneficiaries, and do not obtain third party beneficiary rights. *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 2000). In fact, numerous courts have considered claims similar to plaintiffs' in this case and concluded that mortgage loan borrowers do not have standing as "intended beneficiaries" of HAMP SPAs. *See e.g. Escobedo v. Countrywide*, No. 09-CV-1557, 2009 WL 4981618 at *3 (S.D. Cal. Dec. 15, 2009) (dismissing breach of contract claim brought by borrower for defendant's

ORDER GRANTING MOTIONS TO DISMISS—No. C-10-01712 RMW
JLR                                                                 6

alleged breach of HAMP SPA because plaintiff was not an intended beneficiary under the SPA, and therefore lacked standing to enforce it); *Villa v. Wells Fargo Bank*, No. 10CV81, 2010 WL 935680, at *3 (S. D. Cal. March 15, 2010) (same); *Zendejas v. GMAC Wholesale Mortg. Corp.*, No. 1:10-CV-00184, 2010 U.S. Dist. LEXIS 59793 (E.D. Cal. Jun. 16, 2010) (same). The court in *Escobedo* further held that "a qualified borrower would not be reasonable in relying on the [HAMP] Agreement as manifesting an intention to confer a right on him or her because the [HAMP] Agreement does not require that a [loan servicer] modify eligible loans." *Escobedo*, 2009 WL 4981618 at *3. Defendant BACHL argues that like the plaintiff in *Escobedo*, plaintiffs in this case could not reasonably rely on the SPA as manifesting an intent to modify plaintiffs' loan and in any event, HAMP does not require loan servicers to modify loans.

In light of the cases cited, BACHL's arguments appear to have merit. What's more, BACHL's argument is unopposed. Accordingly, the court dismisses Count 1.

### B.     Count 2: Violation of Due Process by BACHL

In Count 2, plaintiffs allege that BACHL violated their constitutional due process rights by failing to provide meaningful notice regarding its decision to grant or deny a borrower's request for HAMP modification, or establish procedures to appeal a HAMP modification denial.

On the other hand, BACHL argues that Count 2 fails as a matter of law because BACHL is not a state actor and because HAMP does not afford plaintiffs a protected property interest. First, BACHL asserts that participation in a program sponsored by the federal government is not enough to constitute action under the color of federal law. *See Bank v. Nimmo*, 677 F.2d 692, 702 (9th Cir. 1982) ("Although a federal home loan guaranty program, this, alone, in our view, is insufficient to convert the actions of the private lender into governmental action."). Second, BACHL points out that HAMP does not confer a "protected property interest." *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 570 (1972). Specifically, BACHL argues that HAMP grants the decision maker discretionary authority in its implementation and therefore, cannot establish a protected property interest.

BACHL's arguments appear to have merit. *See Huxtable v. Geithner*, 2010 U.S. Dist. LEXIS 91382, No. 09cv1846 BTM (WVG), at * 4 ("Congress did not intend to create an entitlement or

protected property interest in HAMP modifications"); *Williams v. Geithner*, No. 09-1959, 2009 WL 3757380, at *6-7 (D. Minn. Nov. 9, 2009) (HAMP regulations "did not intend to create a property interest in loan modification for mortgages in default."). As a result, the court dismisses Count 2.

### C. Count 3: Violation of Due Process by DeMarco, Fannie Mae, Williams, and Schuppenhauer

Plaintiffs' Count 3 contains allegations similar to Count 2. Here, plaintiffs assert that DeMarco, Fannie Mae, Williams, and Schuppenhauer violated plaintiffs' due process rights because they failed to require adequate notice to borrowers regarding HAMP eligibility or denial. Specifically, plaintiffs allege that until the issuance Supplemental Directives 09-07 and 09-08, HAMP directives failed to require service providers to issue a written statement stating the reasons why HAMP benefits were denied.. Compl. ¶ 126. What's more, plaintiffs' note that HAMP guidelines still fail to establish or require a procedure by which borrowers can challenge an erroneous denial of modification. *Id.*

Defendants, however, argue that plaintiffs lack standing to bring a claims against DeMarco, Fannie Mae, Williams, and Schuppenhauer because the alleged harm is not fairly traceable to any action taken by those parties. *See Monsanto Co. v. Greeston Seed Farms*, 130 S. Ct. 2743 (2010). In other words, plaintiffs HAMP denial is traceable only to BACHL's refusal to modify the loan, not the other defendants. To be sure, plaintiffs assert that Fannie Mae is required to implement an appeals procedure for HAMP denials, regardless of the servicer involved. But defendants note that they are bound to act within the Treasury Guidelines and those Guidelines do not provide an appeals process. Like BACHL, the remaining defendants also argue that the Complaint does not adequately allege a deprivation of a protected property interest because the prospective advantage is too uncertain.

The defendants' arguments appear to have merit. *See, e.g., Easter v. Am. W. Fin.*, 381 F.3d 948, 961-962 (9th Cir. 2004) (dismissing defendants who did not own named plaintiffs' loans because imposition of usurious interest rates could only be traced to lenders that owned named plaintiffs' loans); *Williams*, 2009 WL 3757380 (noting the "broad discretion afforded to servicers in the modification process" and holding that a putative class of HAMP-eligible borrowers could not demonstrate "a legitimate claim of entitlement to a loan modification"). Again, defendants'

ORDER GRANTING MOTIONS TO DISMISS—No. C-10-01712 RMW
JLR                                                          8

arguments are unopposed.  For these reasons and the reasons stated with respect to Count 2, the court dismisses Count 3.

### D. Count 4: Breach of the Covenant of Good Faith and Fair Dealing by BACHL

In Count 4, plaintiffs allege that "[i]nherent in the contractual covenant to engage in good faith and fair dealing is [BACHL]'s obligation to give borrowers meaningful notice of its determination of their HAMP eligibility and the fact underlying that decision, as well as to provide borrowers meaningful access to a procedure by which borrowers can challenge an erroneous decision.  Neither notice nor a means of redress was provided by [BACHL]." Compl. ¶ 129.

But BACHL notes that "[g]enerally, no cause of action for the tortious breach of the implied covenant of good faith and fair dealing can arise unless the parties are in a 'special relationship' with 'fiduciary characteristics.'" *Pension Trust Fund v. Federal Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002).   BACHL argues that neither the loan nor the SPA create a special relationship with fiduciary characteristics.  Further, BACHL points out that the "implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract." *Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089, 1093-94 (2004).  In this case, BACHL asserts that it could not have violated any implied duties where plaintiffs fail to allege that BACHL has not acted in accordance with the express terms of the loan agreement.  Although plaintiffs also allege violation of the SPA, BACHL argues that plaintiffs are not intended beneficiaries of that agreement and therefore lack standing to bring a claim.

BACHL's arguments appear to have merit.  *See Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1093 n.1 (1991) ( "The relationship between a lending institution and its borrower-client is not fiduciary in nature.").  Accordingly, Count 4 is dismissed.

ORDER GRANTING MOTIONS TO DISMISS—No. C-10-01712 RMW
JLR                                                                                       9

**III. ORDER**

Defendants' arguments appear to have merit and are unopposed. For the foregoing reasons, the court dismisses all claims with leave to amend within 20 days. The court also hereby resets the Case Management Conference to November 19, 2010 at 10:30 am.

DATED: 10/01/2010

RONALD M. WHYTE
United States District Judge